SECURITY TRUST COMPANY *v.* JAQUA, ADMINISTRATOR, ET AL.

[No. 12,428. Filed February 2, 1926. Rehearing denied June 9, 1926. Transfer denied October 26, 1926.]

1. EXECUTORS AND ADMINISTRATORS.—*Order of court charging executor with appraised value of certain real estate held erroneous.*—An order of court, made on executor's final report, requiring it to charge itself with the appraised value of certain real estate, was erroneous in the absence of any claim that executor was derelict in selling the property or that the estate suffered any loss thereby. p. 241.

2. EXECUTORS AND ADMINISTRATORS.—*Executor entitled to credit for amounts paid out on legitimate debts of estate.*—The court cannot refuse to allow an executor credit for money paid out on legitimate debts of and claims against the estate notwithstanding the executor was negligent in the performance of its duties. p. 243.

3. EXECUTORS AND ADMINISTRATORS.—That court was unable to determine the entire income of an estate during administration would not justify it in failing to charge the executor with moneys actually received by it or in refusing to give credit for payments properly made. p. 244.

4. EXECUTORS AND ADMINISTRATORS.—*Appellate tribunal will not examine evidence as to charges against executor not questioned by either party.*—On appeal from an order of court modifying an executor's final report and charging executor with interest on appraised value of certain real estate in lieu of rentals actually received therefrom, the reviewing court will not examine the evidence to determine whether injury resulted therefrom where neither party raised any question as to the action of the court in that respect. p. 245.

5. EXECUTORS AND ADMINISTRATORS.—*Approval of current report makes prima facie case in favor of executor for allowance in final report.*—The action of the court in approving a current report allowing executor's attorney a fee for a specified amount made a *prima facie* case in favor of the executor, and, in the absence of evidence showing that such allowance was excessive, the executor should be credited with that amount on final report. p. 245.

From Morgan Circuit Court; *James B. Wilson,* Special Judge.

Final report in the estate of Pierre Gray, deceased, by the executor, the Security Trust Company, to which Alonzo L. Jaqua, administrator, and others filed exceptions. From an order modifying the report, the executor appeals. *Affirmed on condition of remittitur, otherwise reversed.* By the court in banc.

*J. E. Sedwick* and *Matson, Carter, Ross & McCord,* for appellant.

*Frank B. Jaqua* and *Shirley, Whitcomb & Dowden,* for appellees.

McMAHAN, J.—Appellant, as executor of the last will and testament of Pierre Gray, filed its final report, to which exceptions were filed. The court found the report was not correct and should not be approved; that by reason of confusion and commingling of the funds of the estate with the funds of the executor, the many changes in the investment of the funds of the estate, loans made out of such funds to the advantage of the executor, or some officer thereof, and to the disadvantage of the estate, the keeping of large balances of cash on hand, its ever changing amounts, all without order or permission of the court, it was impossible to determine what the income from the estate actually was, and especially so after 1913; that the estate properly managed should have produced a net income of four and one-half per cent. annually after 1913; that a payment of $2,000 to the executor, for which credit was taken in its report of February, 1910, should be disallowed and charged back to the estate and that no fees to the executor for services should be allowed after 1913; that all reports made after 1913 should be disregarded and disapproved and that the executor should make a new report charging itself as of the date of its report in 1913 with $45,224.03 and interest from May, 1913, in the sum of $16,008.03, a total of $61,232.06.

The court allowed appellant credit for $20,800 paid to the widow of the decedent according to the terms of the will, and with certain other items aggregating in all $21,561.74. The court found that the executor should charge itself with the $2,000 item referred to in its report of 1910, with four and one-half per cent. interest for twelve years, the total of said item with interest being $3,080, and making the total amount with which appellant as executor was to charge itself as of January, 1922, $42,750.29, and that the executor should charge itself with four and one-half per cent. interest

on this amount for two years and five months, which interest the court calculated and fixed at $4,560, making the total amount which the court found to be due the estate from appellant $47,310.29. A judgment having been rendered in accordance with this finding, appellant appeals.

The errors assigned are that the court erred in overruling appellant's motion to modify the judgment, and in overruling its motion for a new trial. The action of the court in overruling the motion to modify the judgment need be given no consideration as such question is presented in the motion for a new trial, the specifications of which are that the decision is not sustained by the evidence, is contrary to law, and that the amount of the recovery is too large.

The evidence in this matter was heard by the regular judge of the Morgan Circuit Court who died without having entered any finding or judgment. The cause was thereafter submitted to a special judge, and it was stipulated that a transcript of the evidence introduced on the trial before the regular judge should be read in evidence and when read should constitute the evidence in the cause, and all of the evidence except certain exhibits which were not copied into said transcript having been lost, substituted copies thereof should be included in said transcript and the contents of those which could not be secured should be supplied where possible from oral evidence contained in the transcript, and that recitals in reference to their contents in the transcript should be taken as true.

Appellees contend that the bill of exceptions on its face shows that all of the evidence is not in the record and therefore no question requiring a consideration of the evidence is presented for our consideration. The evidence which appellees contend is omitted is a memorandum signed by the president of appellant company

and addressed to another officer of appellant, and marked as exhibit "G," in which the former said: "I will turn over to the Gray estate some of the stock from time to time. I do not want to lose control of them and will take them out as needed at the figure they are put in." Exhibit "G" was lost and the parties were not able to produce it at the trial before the special judge. It was therefore not introduced and read in evidence at the last trial, but in the testimony of one of the witnesses as the same appears in the transcript of the evidence read and introduced as the evidence before the special judge, this exhibit was sufficiently identified and its contents proved. When exhibit "G" was shown to this witness, for some reason, it was then marked exhibit "S" and again read in evidence. The evidence without any conflict shows that these two exhibits were the same instrument. The said exhibit being referred to and set out in full in the testimony of such witness, appellee's contention cannot prevail.

Pierre Gray died November 25, 1907, testate, and directed among other things that his executor pay his widow $200 per month during widowhood. The widow remarried January 10, 1922, and on March 3, 1922, the final report, to which the exceptions were taken, was filed.

The first current report of the executor was filed in February, 1910, and contained a detailed report of the trust up to and including February 15, 1910. In this report the executor charged itself with an income from personal property of $41,604.01, and personal property unsold of the estimated value of $5,000, making a total of $46,604.01. Credit was claimed for disbursements aggregating $21,412.99, none of which are involved in this appeal, except one item of $2,000 for a note which appellant reported the decedent owed it at the time of

his death. This report was approved and as approved appellant stood charged with "personal income of $20,191.02, and personal property of the estimated value of $5,000." The executor also charged itself with the income received from the rent and sale of real estate and of mortgages held on real estate sold and real estate unsold, as follows: cash $11,056.20, mortgage notes and real estate unsold $23,483.33, or a total in the real estate account of $34,559.53. In the real estate unsold was included a lot in Morton place estimated at $7,000. After taking and being allowed credit for certain disbursements on account of the real estate, appellant stood charged with a balance as follows: Personalty account $25,191.02, realty account $28,714.33, a total of $53,905.35. In the order approving this report, the executor was allowed $3,000 for services of itself and its attorneys.

The second report was filed April, 1913, and covered the administration to April 12, 1913. In this report appellant charged itself with the balance on hand as per report of 1910, as follows: $20,191.02, and $5,231 transferred from the realty account and with cash received on account of sale of personal property and real estate, $23,772.16, a total of $49,194.18. Appellant was therein charged with receipts on account of the real estate account and allowed credits in both the personal and real estate accounts, so that the total cash and securities then on hand and with which it was charged amounted to $38,224.03. In addition to this, appellant was also charged with real estate estimated at $9,400 which included the lot in Morton place valued at $7,000 and which had not been sold. This report was approved by the court and, in the order of approval, the court allowed the executor $500 for its services and $500 for the services of its attorneys to date. The executor in this report claimed and was al-

lowed a credit of $3,000 for services of itself and attorney in accordance with the order of the court made on approving the first report.

The next report made by the executor was filed December 12, 1919. In this report appellant credited itself with $500 for services as executor and $500 paid its attorney in accordance with the order of the court made when the second report was approved in 1913. According to this report, appellant was charged with a balance of $32,404.05 in the personalty account and $9,987.08 in the realty account, an aggregate of $42,-389.13. Of the realty account, $587.08 was in cash and the balance was represented by unsold real estate. In the order approving this report, appellant was allowed $1,500 for services rendered.

A fourth report was filed December 30, 1920, wherein appellant reported the sale of the real estate in Morton place heretofore mentioned, and which had been charged against appellant in the sum of $7,000, and that said real estate had been sold for $6,000. A fifth report was filed in January, 1922, which was also approved by the probate court. According to this report as made and approved, appellant was chargeable with a balance of $38,166.77 which included both personalty and real estate.

Appellees excepted to the final report on the grounds: (1) That appellant was chargeable with profits which it had made in the use of the trust funds; (2) that appellant, as executor, without order of court, invested certain money of the trust in certain improvement bonds which it resold at a loss of $58.18, which with interest thereon should be charged against appellant; (3) that appellant should be charged with $14.98 with interest, that being the alleged difference between the amount of an investment in certain government certificates of indebtedness and the amount reported in-

vested; (4) that it should be charged with $12,920 invested in certain stocks and bonds without order of court; (5) that because of the neglect and conduct of appellant as executor, it was not entitled to any compensation for its services and that it should be required to charge itself with and account for the sum of $5,173.60, for which it had taken credit because of services; (6) that the amount for which appellant had taken credit on account of payment of attorney's fees was excessive, such amount being $2,250, which is alleged to be excessive in the sum of $1,000; (7) that for long periods of time, appellant had neglected to invest the trust funds and neglected to make reports to the court in reference thereto for certain named periods, during which time it had on hands large amounts of money belonging to the estate, for which it should be charged with interest thereon in the sum of $8,850; (8) that appellant should not be allowed to take credit for the $2,000 mentioned in the first report on account of a note for $2,000 which it claimed the decedent was owing it at the time of his death. They also objected to allowing appellant credit for $638.17 paid to a certain law firm, and that appellant should be charged with $1,-340.81 which its book of account showed had been received by it and not accounted for.

The first contention of appellant is that the court erred in requiring it to charge itself with the sum of $45,224.03 as of the date of the 1913 report.

1. This contention we think must be sustained. The amount actually on hand at that time for which appellant was chargeable was $38,224.03, or $7,000 less than the amount fixed by the court. The only explanation of this difference is that there was included in said $45,224.03 one of the three parcels of real estate which had been mentioned in the report filed in 1913, and

which was therein stated to be worth $7,000. There is no claim that appellant was derelict in selling that property or that the estate suffered any loss thereby. Not only did the court charge appellant with this $7,000 but the court also required appellant to account for four and one-half per cent. annual interest on this $7,000. This piece of real estate was afterwards sold for $6,000, and appellant should have been required to charge itself with the $6,000 received from the sale of this real estate. Appellant should have been given credit for the difference between the appraised value of said real estate and the $6,000 for which it was sold, plus four and one-half per cent. interest on this difference, a total of $1,390 which we hold to be an overcharge.

According to the decedent's will, appellant was directed to collect the rents and profits from the real estate, pay the taxes thereon, and with the consent of the parties to whom the real estate was devised, it could sell all or any part of the real estate. This being true, appellant would ordinarily have been entitled to credit for the taxes paid on the real estate in the sum of $422.38. But, for reasons hereafter disclosed, there was no error in the action of the court in refusing to allow appellant credit for these taxes.

Under the terms of the will, appellant was required to pay the widow of the decedent $200 each month. These payments were made for 105 months and aggregated $21,000. For some reason the court gave appellant credit for $20,800 on account of these payments. Appellees concede that appellant should have been given credit for the extra $200.

In the report filed by appellant in 1913, as well as in subsequent reports prior to the final report, appellant claimed credits for certain amounts for its services and for the services of attorneys. The several charges and claims were allowed by the court when the several

current reports were approved. But the court on the trial in the instant case refused to allow appellant credit for these several items. The court also refused to allow appellant anything for its services or for disbursements therefor after May, 1913. Appellant complains of this action, and especially does it complain of the action of the court in refusing to allow it credit for the amount allowed by the court when the report of 1913 was approved. Without entering into a discussion of the evidence concerning the manner in which appellant handled the property and money belonging to the estate, we are not prepared to say the court erred in that matter.

In addition to the $422.38 paid out for taxes on the real estate as stated above, appellant also paid out for taxes the further sum of $709.05. There is no 2. claim that these taxes were not proper and legal claims against the estate, or that the amount so charged was augmented in any manner by reason of any neglect or failure on the part of appellant to perform its duty in a faithful manner. If these claims for taxes were legal and proper claims against the estate, we can conceive of no reason why the executor should not be given credit for the amount so paid. The court, in a case of this character, may refuse to allow an executor anything for his compensation, but the court cannot refuse to allow an executor credit for money paid out on legitimate debts and claims, such as taxes, against the estate. The fact that an executor has been negligent in the performance of its duties will not justify the court in refusing to allow credit for money properly and correctly paid out for such claims as taxes. But, as hereafter shown, the record does not affirmatively show that appellant was not in fact given credit for all taxes paid.

Appellant also contends that the court erred in refusing it credit for $2,000 on account of a note for that

amount which it claims the decedent had given it in 1904, and which was not paid until after his death, when appellant paid itself without having the same allowed by the court. Appellant made a report of this transaction in the first current report, and that report was approved by the court at that time. The correctness of this allowance, however, was put in issue by the exceptions filed to the final report and such exceptions were sustained. This note was not produced at the trial in the instant case, appellant claiming it had been lost. While the action of the court in approving the current report wherein appellant claimed credit for having paid itself the amount of the note was sufficient to make out a *prima facie* case in favor of appellant, we are of the opinion that the evidence was sufficient to destroy the effect of the action of the court in approving the current report allowing appellant credit for this item, and while the evidence would have been sufficient to have sustained the court in allowing appellant credit for such payment, we are not convinced that the evidence is not sufficient to sustain the court in sustaining the exception and in refusing to allow appellant credit for this item. In this connection, appellant says the court failed to charge it with rentals received from real estate, which were in excess of the amount which it claimed was due it because of this $2,000 note; that the court should have charged it with such rentals and have given it credit for such note. The failure of the court to charge it with the rentals received furnish no reason for allowing appellant credit for the amount of such note. Of course, the court should have charged appellant with the rent received. The fact that the court was not able to determine what the income of the estate actually was did not justify the court in failing to charge appellant with moneys actually received by it, or in refusing to give it

credit for payments properly made by it, where the evidence without conflict clearly furnished the data for such charges and credits.

Appellant, however, makes no claim that the income actually received from the real estate was less than four and one-half per cent. of the appraised value of

4. the same and that it was harmed by such action of the court. Neither appellant nor appellees having raised any question as to the action of the court in this matter, we decline to enter into an examination of the evidence to determine whether either of them was harmed by the action of the court. The trial judge in determining the amount of the income of the real estate with which appellant should be charged had before him the evidence as to the amount of taxes paid. and the amount of the rent received in so far as disclosed by the evidence and we must assume that in arriving at the income with which appellant should be charged, the evidence concerning taxes and rents was given due consideration. Viewing the subject in this manner, we are not able to say the court did not as a matter of fact give appellant credit for the taxes actually paid. As heretofore stated, appellant makes no claim that the amount of the income when determined by the method adopted by the court was in excess of what it would have been if the court had charged it with the rents actually received and given it credit for the taxes paid.

In the second current report, the executor asked the court to make an allowance in the sum of $500 in favor of its attorney. The court at that time approved

5. that report and made an allowance in favor of such attorney for $500, which amount was afterward paid to such attorney. The action of the court in fixing the value of the attorney's services at $500, in the absence of any evidence showing that such allow-

ance was not proper, made a *prima facie* case in favor of appellant in so far as that item is concerned. Appellees make no claim that there is any evidence to meet or overcome this *prima facie* showing. Our attention has not been called to any evidence showing that the allowance of $500 to this attorney was not proper, and we are of the opinion that having acted upon this allowance appellant should have been given credit for $500 instead of $300, and that appellant should be given credit for the additional $200, and that it is entitled to an additional credit of $168 because of interest charged.

Appellant should in our judgment have been given credit for $1,390 interest, on account of the overcharge on the tract of real estate, $200 paid to the widow, and the $368 on account of the failure of the court to allow it credit for the $500 paid to its attorney. These three items aggregate $1,958. If appellees will within thirty days file a remittitur with the clerk of the trial court as of the date of the finding for $1,958, and file with the clerk of this court the certificate of the clerk of the trial court showing such remittitur, this cause will be affirmed. Upon the failure of appellees to file such *remittitur* and certificate, the cause will be reversed for further proceedings.

## ON PETITION FOR REHEARING.

McMAHAN, P. J.—In our principal opinion, we held that appellant had been overcharged $1,000 on account of the lot in Morton place which was sold for $6,000; that it should have been given credit for an additional $200 paid to the widow and also for $200 on account of the failure of the court to allow it credit for the full amount of the $500 which had been theretofore allowed by the probate court for attorney fees. In calculating the interest on these several sums, we allowed interest to January, 1922, when, as a matter of fact, interest

should have been allowed to the date of the finding. In fixing the amount to be allowed on account of the $1,000 item, we accepted the calculation made by appellant and held that it should have been given credit for $390 for interest on that item. Appellant, in all fairness, should have been given credit for the further sum of $98.75, for interest on this $1,000 item from January, 1922, to the date of the finding. It is also entitled to credit for the further sum of $43.50 on account of interest on the two $200 items.

Appellant is urgent in its contentions that it should have been allowed credit for the $2,000 which it asserts was paid on a note of the decedent, and that it was also entitled to have a credit on account of interest on this item. We have again examined the evidence bearing on this subject, and while we are impressed with appellant's contention that the trial court reached a wrong conclusion in refusing to allow credit for this payment, the evidence is sufficient to warrant the court in drawing the inference it did. This being true, we adhere to our former holding in reference to this contention. Appellant refers to other items for which it claims it should have been given credit. Among these is the claim that the amount on which interest was charged should have been reduced because of the monthly payments to the widow and the claim for credit because of taxes paid. These contentions, however, are not well taken. Appellees are, however, directed to remit the further sum of $142.25, as of the date of the finding, and upon the filing of the certificate of the clerk of the trial court with the clerk of this court on or before June 30, 1926, showing such *remittitur*, the petition for a rehearing will be denied.